# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CRIMINAL CASE NO. 3:07cr211

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>vs.       )<br>)<br>)<br>R. MICHAEL GEE.      )<br>               ) | **O R D E R** |

**THIS MATTER** is before the Court on Defendant Gee's Appeal from and Objections to the Magistrate Judge's Order Denying his Motion to Sever [Doc. 166], filed February 11, 2009.

By Order entered February 10, 2009, Magistrate Judge David Keesler ruled that Counts 28 through 34 of the Fourth Superseding Bill of Indictment be severed from the remaining charges but that Defendant Michael Gee's (Gee) motion to sever his trial from that of his co-defendants be denied.[1] [Doc. 163]. Defendant Gee objects to that ruling.

---

[1] The severed counts charge Defendant Victoria L. Sprouse (Sprouse) with perjury and obstruction of justice and do not name Defendants Gee or Michael Pahutski (Pahutski).

1

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 59(a) provides in pertinent part:

> A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination. A party may serve and file objections to the order within 10 days after being served with a copy of a written order[.] The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous.

Fed.R.Crim.P. 59(a); *accord*, 28 U.S.C. §636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

## PROCEDURAL HISTORY

The first indictment in this case, filed August 29, 2007, charged one defendant, Pahutski, with three charges: conspiracy to commit wire, bank and mail fraud; conspiracy to money launder; and money laundering. [Doc. 3]. On November 16, 2007, the Government filed a Superseding Bill of Indictment adding Sprouse as a co-defendant in the conspiracy counts and also adding substantive counts of mail fraud, money laundering, perjury and obstruction of justice against her. [Doc. 10]. Three new charges of

2

making false statements to a bank were added as to Pahutski. [Id.].

On March 20, 2008, the Government filed its Second Superseding Bill of Indictment which named new defendants, including Gee, and added additional charges. [Doc. 27]. In that version of the indictment, the Government included three counts of perjury and three counts of obstruction of justice against Sprouse. [Id.]. Gee was named as a defendant in Count 1, conspiracy to commit wire, mail and bank fraud; Counts 6, 7, & 8, bank fraud; and Counts 12, 15, & 18, making false statements to banks.

On August 12, 2008, the Government filed a Third Superseding Bill of Indictment. [Doc. 88]. In that indictment, the names of three co-defendants, Springs, Mascaro and Rankin, were removed because they had entered into plea agreements with the Government and entered guilty pleas.

On November 6, 2008, the Government filed its Fourth Superseding Bill of Indictment. [Doc. 117]. Gee is named as a defendant in Count 1, the mail, wire and bank fraud conspiracy; Counts 8, 9, 10, & 11, bank fraud; and Counts 15, 17, 19, & 21, making false statements to banks. This version also contains four counts of perjury and three counts of obstruction

of justice against Sprouse. [Id.]. On October 15, 2008, Gee moved to sever his trial from that of his co-defendants. [Doc. 100].

The Magistrate Judge ruled that the perjury and obstruction of justice counts naming only Sprouse should be severed. By Order entered simultaneously herewith, the undersigned has affirmed that ruling and Counts 28 through 34 have been severed from the trial of the other counts.

The Magistrate Judge denied Gee's motion to sever his trial from that of his co-defendants. Gee seeks reconsideration of that ruling.

## BACKGROUND

The charges in this case stem from mortgage fraud schemes allegedly engaged in by an attorney (Sprouse), a mortgage broker (Pahutski), real estate investors, a real estate appraiser (Gee), builders and companies (among others) to defraud banks lending money in connection with real estate transactions. The alleged schemes took place from 2000 through 2004 and involved numerous unindicted and indicted co-conspirators. According to the Government, the "centerpiece of the Indictment is the Flip Scheme alleged in Counts One through Twenty-Seven against defendants Gee, Sprouse and Pahutski" involving fraudulent

mortgages on about 214 residences in Charlotte, North Carolina between January 2001 and September 2002. [Doc. 165, at 2].

The current version of the indictment alleges that the mortgage fraud was accomplished in three different manners. The Decorator Disbursement Scheme was the first scheme chronologically. It is the subject of Count 35 which charges a mail, wire and bank fraud conspiracy involving Sprouse and unindicted co-conspirators, such as attorneys, real estate agents, builders, companies and investors. The indictment described this scheme as follows: real estate was purchased by an investor from a builder who agreed to return a portion of the purchase price to the investor disguised as a decorator allowance allegedly paid to a third-party decorator. [Doc. 117, at 1]. This conspiracy operated from January 2000 through January 2001. [Id.]. Due to the fact that the indictment alleges conduct by unindicted co-conspirators in this scheme, only Sprouse is named as the defendant in Count 35. The Flip Scheme began the same month that the Decorator Disbursement Scheme ended, January 2001. [Doc. 117, at 1]. Thus, there is an overlap of time between this conspiracy and the Flip Scheme conspiracy. [2]

---

[2] In response to Gee's motion, the Government has acknowledged that discovery shows that Gee performed appraisals in connection with refinances of some of the

The Flip Scheme is the subject of Count 1 which charges another mail, wire and bank fraud conspiracy involving Sprouse, Gee and Pahutski. The indictment describes this scheme as follows: real estate was purchased and then resold to buyers at a much higher price by using simultaneous closings arranged by an attorney, Sprouse, involved with the scheme. [Id.]. Gee is alleged to have provided false appraisals as part of the scheme and Pahutski served as the mortgage broker for the deals. [Id., at 4]. This conspiracy operated from January 2001 through September 2002. This conspiracy also involved unindicted co-conspirators, such as mortgage brokers, appraisers, and investors. In addition to the conspiracy charge, Gee, Sprouse and Pahutski are charged variously in Counts 2 through 27 with other substantive charges such as bank and mail fraud, money laundering, conspiracy to money launder and making false statements to banks. Each of these substantive charges arises from conduct which occurred during and in connection with the conspiracy.

---

properties involved in this scheme. [Doc. 122 at 2]. Because the Government did not make a pre-trial proffer of evidence by requesting a hearing, the Court looks to the allegations of the indictment alone. United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005), *certiorari denied* 547 U.S. 1061, 126 S.Ct. 1669, 164 L.Ed.2d 408 (2006). The Fourth Circuit has not determined whether in such a situation it would be appropriate to consider a proffer within the pleadings. Id., at n.1.

The third form of mortgage fraud, known as the Primary Residence Scheme, is charged in Count 36 as conspiracy to commit mail, wire and bank fraud. The indictment describes this scheme as follows: builders would sell real estate to investors who would falsely state on mortgage applications that the property was being used as the primary residence of the buyer. Again, Sprouse was the attorney who handled the closings. The indictment alleges that this scheme began as early as May 2002 with the first mortgage application being submitted in August 2002 and the first closing in connection with the scheme occurring in September 2002.[3] [Doc. 117, at 42-45]. The indictment alleges that money earned from the Flip Scheme was laundered by placing it in the Primary Residence Scheme. [Id., at 22-25]. Although Sprouse is the only defendant named in this count, her co-defendants Mascaro, Rankin and Springs, who were involved with this conspiracy, have already entered guilty pleas. This count also names other unindicted co-conspirators who were builders, companies, attorneys, mortgage brokers, and real estate agents. This conspiracy operated from May 2002 through February 2004 and thus also overlaps the

---

[3] Again, the Court looks to the allegations of the indictment, not the arguments made by the parties in their briefs. Cardwell, 433 F.3d at 385.

Flip Scheme conspiracy which continued through September 2002.[4] Counts 37 and 38 involve substantive charges of bank fraud and money laundering conspiracy against Sprouse. There are, however, unindicted co-conspirators named in these counts as well as co-defendants Mascaro and Springs.

Counts 28 through 31 concern Sprouse's testimony as a defendant during a civil trial in January and February of 2007. <u>Southstar Funding, L.L.C. v. Sprouse</u>, 3:05cv253. These counts charge Sprouse with perjury as a result of answers provided during that trial. Count 32 charges Sprouse with obstruction of justice by concealing evidence during that trial.

In Counts 33 and 34, it is alleged that during the investigation of this criminal case, the grand jury subpoenaed documents from Sprouse's law firm which she removed and/or destroyed. As a result, she is charged with obstruction of justice in connection with the grand jury subpoenas.

None of the conduct in Counts 28 through 34 involved other co-defendants or unindicted co-conspirators. As previously noted, the undersigned has severed Counts 28 through 34 from the trial of this action.

---

[4] Gee argues that the Government has conceded this scheme did not begin until September 2002 after the Flip Scheme ended. The indictment alleges that it began in May 2002 and as noted *infra*, the Court looks to the indictment.

As a result, these charges, which involved only Defendant Sprouse and did not implicate any conduct by other defendants or unindicted co-conspirators, are no longer part of the case.

**DISCUSSION**

Defendant Gee claims that, pursuant to Federal Rule of Criminal Procedure 8(b), he has been improperly joined as a defendant with Sprouse and Pahutski and, alternatively, that if properly joined, he should be severed pursuant to Federal Rule of Criminal Procedure 14.

Rule 8(b) provides that an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Gee does not argue that his joinder for trial in Count 1 with Sprouse and Pahutski is improper. United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995), *certiorari denied* 515 U.S. 1151, 115 S.Ct. 2597, 132 L.Ed.2d 844 (1995) (defendants charged in the same conspiracy should be tried together). His argument is devoted to the purported misjoinder of Counts 35 and 36 with Count 1 which he describes as follows: "A problem arises, where, as here, two defendants are charged

9

together in some counts, and one of the defendants [Sprouse] is also charged in additional counts involving very different evidence than the counts alleged against both defendants." [Doc. 166, at 5]. Thus, the issue is whether the three defendants, Sprouse, Gee and Pahutski, participated in the same act or transaction, or the same series of acts or transactions in connection with Counts 35 and 36. Gee concedes that they did so in connection with Count 1. [Id.].

> [The Fourth Circuit has] previously defined the level of relatedness required to satisfy Rule 8(b)'s requirements. "Separate acts constituting separate offenses are sufficiently related to be within the same series if they arise out of a common plan or scheme." "There must be a series of acts unified by some substantial identity of facts or participants." "[The Circuit has] defined 'transaction' flexibly, as 'implying a connection or logical relationship rather than immediateness.'"

United States v. Haney, 914 F.2d 602, 606 (4th Cir. 1990) (citations omitted). The phrase "series of acts or transactions" logically includes transactions "so interconnected in time, place and manner as to constitute a common scheme or plan." United States v. Santoni, 585 F.2d 667, 673 (4th Cir. 1979), *certiorari denied sub nom* Santoni v. United States, 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 459 (1979) (citations omitted). "Where the defendants' acts are part of a series of acts or transactions, it is not necessary that each defendant be charged in each count, nor to

show that each defendant participated in every act or transaction in the series." Id.

This case involves three conspiracies to defraud lending institutions in connection with real estate transactions as well as substantive crimes arising out of those conspiracies. [Doc. 117, at ¶¶51(A), 105(A),113(A)]. Although each alleged conspiracy used a different "scam" (the decorator allowance, the flip and the false primary residence document), to carry out the fraud, each used materially false mortgage documents to obtain money from lending institutions and thus, defrauded those institutions. [Doc. 117, at ¶¶51(B) - (H) (in connection with the flip scheme, false mortgage applications, false documentation in support of applications, false settlement statements, false appraisals, false title opinions, false deeds); 105(B) - (F) (in connection with the decorator allowance scheme, false mortgage applications, false settlement statements, false downpayments, false decorator allowances, improper disbursement of checks prior to deposit); 113(B) - (F) (in connection with the primary residence scheme, false mortgage applications, false settlement statements, false downpayments, false deeds of trust). As such, the criminal acts of Gee, Sprouse and Pahutski are "'unified by some substantial identity of facts or

participants,' [and] 'arise out of a common plan or scheme.'" United States v. Rittweger, 524 F.3d 171, 177 (2nd Cir. 2008) (citation omitted) (defendant properly joined with two other defendants where indictment charged two conspiracies which shared one common participant and a common plan). Nor does Rule 8(b) provide that two defendants participating in two distinct conspiracies may not be joined. Id.; United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004) ("Though charges linked merely by common conspiracy members may not be joined, the charges here are linked not only by common conspiracy members, but also by an overall scheme in which each conspiracy member participated to fraudulently charge the government for health care costs."); United States v. Marzano, 160 F.3d 399, 401 (7th Cir. 1998), *certiorari denied* 525 U.S. 1171, 119 S.Ct. 1095, 143 L.Ed.2d 95 (1999) (although the "simplest case for joinder is where the defendants are charged with having conspired with each other," different conspiracies involving different defendants may be joined when they are part of the same series of illegal acts").

> Accordingly, whether the joinder of defendants in two conspiracies is warranted must be determined on a case-by-case basis. Provided that the defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses," members of two or more conspiracies may be joined as

defendants even where the members have not been charged as participating in one overarching conspiracy.

Rittweger, 524 F.3d at 178. Here, the series of acts and transactions involved defrauding lending institutions through real estate transactions and each scheme had the same ultimate goal. United States v. Feyrer, 333 F.3d 110 (2nd Cir. 2003) (although neither party was charged in the conspiracy counts of the other, participants had common plan to generate income through fraudulent stock transactions); United States v. Johnston, 547 F.2d 282 (5th Cir. 1977), *certiorari denied* 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 261 (1977).

Moreover, the counts at issue involve Sprouse as the common co-conspirator as well as other common actors, including co-defendants who have pled guilty and unindicted co-conspirators, all of whom shared the same goal of defrauding lending institutions. United States v. Lagos, 912 F.2d 464 **3 (4th Cir.1990), *certiorari denied* 498 U.S. 1048, 111 S.Ct. 757, 112 L.Ed.2d 776 (1991). Although Gee makes a weak argument that he is a minor participant compared to Sprouse, Gee is charged in the central conspiracy count as well as the substantive counts arising out of it. United States v. Williams, __ F.3d __ 2009 WL 173865 (7th Cir. 2009). When defendants are charged with crimes that "well up" out of the same series of

acts, they need not be the same crimes. Id.

    Moreover, according to the indictment, the conspiracies overlapped in time. Santoni, 585 F.3d 667. The Decorator Disbursement Scheme is alleged to have overlapped for at least a month with the Flip Scheme. The Flip Scheme overlapped with the Primary Residence Scheme for a period of months. United States v. Warner, 498 F.3d 666, 699 (7th Cir. 2007), *certiorari denied* 128 S.Ct. 2500, 171 L.Ed.2d 786 (2008) (defendants charged with crimes that "well up out of the same series of" acts are properly joined even if not charged with the same crimes). The conspiracies flowed one into the next as the schemes altered just enough to avoid detection. United States v. Lock, 2008 WL 906141 (E.D.Wis. 2008) (indictment alleged unified, interrelated schemes to defraud lenders using false and fraudulent documents all part of an overall mortgage fraud scheme). Moreover, it appears that each scheme was used to launder money generated from the earlier schemes and that the proceeds of the earlier scheme were used, at least in part, to establish the next scheme. Santoni, 585 F.3d at 673. (series of acts necessary to success of previous acts and thus defendants properly joined); United States v. Wirsing, 719 F.2d 859, 863 (6th Cir. 1983). As a result, the same underlying facts are

necessary to prove each claim. For these reasons the Court rejects Gee's argument that he has been misjoined with Sprouse and Pahutski in the Fourth Superseding Bill of Indictment.

Gee's alternative argument is that even if joinder is proper, it is so prejudicial as to warrant severance from his co-defendants. He makes the following arguments in support of that claim: (1) the evidence regarding the two other schemes will involve different defendants and unindicted co-conspirators; (2) the evidence involves different acts; (3) those acts occurred during different time periods; (4) different documents were involved; (5) the conduct will be proved by different witnesses; and (6) evidence of the other crimes would not be admissible against him in a separate trial.

Federal Rule of Criminal Procedure 14 provides that if the joinder of defendants in an indictment appears to prejudice a defendant, the court may sever the defendants' trials. "The party seeking severance bears the burden of demonstrating 'a strong showing of prejudice'." United States v. Branch, 537 F.3d 328, 341 (4th Cir. 2008). That "strong showing" is made only where a defendant is able to show that "a specific trial right" would be violated or that the jury would be unable to make a reliable judgment about

guilt or innocence. Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

> It has long been the rule that, "[b]arring special circumstances, individuals indicted together should be tried together." The mere fact that the charge to be tried is one of conspiracy provides no exception to this general precept. On the contrary, the joint-trial "presumption is especially strong in conspiracy cases." The existence of "special circumstances" is rare, indeed; "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

United States v. Davis, 270 Fed.Appx. 236, 244 (4th Cir. 2008), *certiorari denied sub nom* Davis v. United States, 129 S.Ct. 306, 172 L.Ed.2d 223 (2008) (citations omitted).

Gee claims that the sheer amount of evidence against his co-defendants, specifically Sprouse, will be prejudicial. There is, however, no general right to a severance because the evidence against a co-defendant is purportedly stronger. United States v. Strickland, 245 F.3d 368, 384 (4th Cir. 2001), *certiorari denied sub nom* Strickland v. United States, 534 U.S. 894, 122 S.Ct. 213, 151 L.Ed.2d 152 (2001).

Gee also states that evidence of different schemes occurring at different times and carried out by different means is prejudicial. Nonetheless, "any prejudice resulting from a single trial on multiple counts

can be cured by other, less restrictive means than severance." United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008). Courts routinely instruct juries that they must consider each defendant, each count and the evidence related to it separately and in this Circuit, they are presumed to follow those instructions. Cardwell, 433 F.3d at 388 (district court correctly instructed jury that a separate crime was charged in each count of the indictment and each count as well as the evidence pertaining to it should be considered separately). Moreover, other jury instructions as well as the verdict sheet advise and instruct the jury on the means by which to separate defendants and counts of the indictment. Mir, 525 F.3d at 358 (limiting instructions, curing instructions, redactions, and limitations on testimony all suffice to prevent prejudice).

Gee also argues that evidence related to Counts 35 and 36 would not be admissible against him in a separate trial, thus establishing prejudice. As noted above, juries follow instructions to consider the evidence against each defendant separately. However, "[w]hen offenses are joined under Rule 8 on the ground that they 'are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan,' it is manifest

that evidence of one offense would ordinarily be admissible at a separate trial for the other." United States v. West, 90 Fed.Appx. 683, 688-89 (4th Cir.2004), *certiorari denied sub nom* West v. United States, 543 U.S. 888, 125 S.Ct. 164, 160 L.Ed.2d 148 (2004) (citation omitted). Moreover, "[n]either a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance." United States v. Thompson, 518 F.3d 832, 863 (10th Cir. 2008) (citation omitted); United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984) ("it is not enough to simply show that joinder makes for a more difficult defense").

In this case, the facts related to each scheme and therefore to each count all flow from a common, unified plan to defraud lending institutions. Some of the evidence will overlap; some of the participants will overlap. To force the Government to try Counts 35 and 36 separately from Counts 1 through 27 would result in judicial inefficiency. Rittweger, 524 F.3d at 177 (courts should "apply a 'common sense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce

18

sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or [all] of the defendants resulting from the joinder.") (citation omitted).

> In deciding whether to grant a Rule 14 motion, the district court is given broad discretion in weighing the inconvenience and expense to the government and witnesses in conducting separate trials against the prejudice to the defendants caused by a joint trial. Because joint participants in a scheme often will point the finger at each other to deflect guilt from themselves or will attempt to lessen the importance of their role, a certain amount of conflict among defendants is inherent in most multi-defendant trials. In order to justify a severance, however, joined defendants must show that the conflict is of such magnitude that "the jury will unjustifiably infer that this conflict alone demonstrates that [all] are guilty."

United States v. Smith, 44 F.3d 1259, 1266-67 (4th Cir. 1995), *certiorari denied sub nom* Smith v. United States, 514 U.S. 1113, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995). Gee has not made such a showing. For these reasons the Court finds that Defendant Gee has failed to show prejudice that would result from a failure to sever, and the Court, in its discretion, determines that severance is not warranted.

Gee's remaining arguments in favor of severance relate to Counts 28 through 34 which have been severed from this case for trial. As a result, those arguments are moot.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant Gee's Appeal [Doc. 166] from the Magistrate's Order [Doc. 163] is hereby **DISMISSED**, and the Government's Objections to that Order are hereby **OVERRULED**, and the Motion to Sever of Defendant Gee [Doc. 100] is hereby **DENIED.**

Signed: February 18, 2009

Martin Reidinger
United States District Judge